EXHIBIT B

Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.

**Warning:** NO REPRESENTATION IS MADE THAT THIS FORM OR CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").

## CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of the law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

### Residential Contract of Sale

**Date:**
CONTRACT OF SALE, made as of March , 2019
BETWEEN Amy Cappello a/k/a Amy Stellwagen

**Parties:**
Address: 429 Beach Avenue, Mamaroneck, NY 10543
Social Security Number/Fed. I.D. No(s):

hereinafter called "SELLER", and Raymond P. Russell and Hotiro Aikebaier, husband and wife,

Address: 182 95th Street, #24E, New York, NY
Social Security Number/Fed. I.D. No.(s):

hereinafter called "PURCHASER".

The parties hereby agree as follows:

**Premises:**
1. Seller shall sell and convey and Purchaser shall purchase the property, together will all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: 429 Beach Avenue, Mamaroneck, NY 10543

Tax Map Designation:

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**Personal Property:**
2. This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, bathroom and kitchen cabinets, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (strike out inapplicable items). Additional inclusions: 2nd washer and wine cooler, video cameras, alarm system and second dryer

Excluded from this sale are furniture and household furnishings and Chandelier)s), curtains/drapes and window treatments, fireplace equipment

**Purchase Price:**
3. The purchase price is $914,500

payable as follows:

(a) on the signing of this contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"): $91,450
(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed: $n/a
$n/a
(c) by a purchase money note and mortgage from Purchaser to Seller: $n/a

(d) balance at Closing in accordance with paragraph 7: $823,050

**Existing Mortgage:**
4. *(Delete if inapplicable)* If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:
(a) The premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of percent per annum, in monthly installments of $ which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on
(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.
(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.
(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law ("Institutional Lender"), it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.
(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

**Purchase Money Mortgage:**
5. *(Delete if inapplicable)* If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:
(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $ for its preparation.
(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than percent per annum and the total debt service thereunder shall not be greater than $ per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

**Downpayment in Escrow:**
6. (a) Sellers' attorney ("Escrowee") shall hold the Downpayment for Seller's account in escrow in an IOLA bank account at Chase until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall (not) *(Delete if inapplicable)* hold the Downpayment in an interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be place in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are

located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) Parties acknowledge that, although Escrowee is holding the Downpayment for Seller's account, for all other purposes Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally agree to defend, indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorney's fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provision of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

*Acceptable Funds:*

7. All money payable under this contract, unless otherwise specified, shall be paid by:
   (a) Cash, but not over $1,000.00;
   (b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon not less than 3 business days notice (by telephone or otherwise) to Purchaser;
   (c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of
   $         ; and
   (d) As otherwise agreed to in writing by Seller or Seller's attorney.

*Mortgage Contingency:*

8. (Delete if inapplicable) The obligations of Purchaser hereunder are conditional upon issuance on or beore 30 days from the date of the fully executed contract, 20___, (the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $731,600.00 or such lesser sum as Purchaser shall be willing to accept, at the prevailing fixed rate of interest ~~not to exceed~~ ___ or initial adjustable rate of interest ~~not to exceed~~ ___ for a term of at least thirty (30) or less years and on other customary commitment terms, whether or not conditional upon any factors other than an appraisal satisfactory to the Institutional Lender. Purchaser shall (a) make prompt application to an Institutional Lender for such mortgage loan, (b) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (c) pay all fees, points and charges required in connection with such application and loan, (d) pursue such application with diligence, (e) cooperate in good faith with such Institutional Lender to obtain such commitment and (f) promptly give Notice to Seller of the name and address of each Institutional Lender to which Purchaser has made such application. Purchaser shall comply with all requirements of such commitment (or of any other commitment accepted by Purchaser) and shall furnish Seller with a copy thereof promptly after receipt thereof. If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this contract shall be deemed cancelled and thereafter neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27. If Purchaser fails to give notice of cancellation or if Purchaser shall accept a commitment that does not comply with the terms set forth above, then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph.

*Permitted Exceptions:*

9. The Premises are sold and shall be conveyed subject to:
   (a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;
   (b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;
   (c) Encroachment of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;
   (d) Real estate taxes that are a lien, but are not yet due and payable; and
   (e) The other matters, if any, including a survey exception, set forth in a Rider attached.

*Governmental Violations and Orders:*

10. (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.
    ~~(b) (Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.~~

*Seller's Representations:*

11. (a) Seller represents and warrants to Purchaser that:
    (i) The Premises abut or have a right of access to a public road;
    (ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;
    (iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (Collectively "FIRPTA");
    (iv) The Premises are not affected by any exemptions or abatements of taxes; and
    (v) Seller has been known by no other name for the past ten years, except: as set forth above

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.
(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

*Condition of Property:*

12. Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(f)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

*Insurable Title:*

13. Seller shall give and Purchaser shall accept such title as a reasonable title company shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

*Closing, Deed and Title:*

14. (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a Bargain and Sale deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.
    (b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

*Closing Date and Place:*

15. Closing shall take place at the office of Dana S. Montone, 4 W. Red Oak Lane, Ste 302, White Plains, NY 10604 at 11:00 o'clock on ~~_____, 2019~~ [or about June 1, 2019] or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of N/A

*Conditions to Closing:*

16. This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:
    (a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.
    (b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their uses as a ___ family dwelling at the date of Closing.
    (c) The delivery by Seller to Purchaser of a duly executed and sworn affidavit (in form prescribed by law) claiming exemption of the sale contemplated hereby, if such be the case, under Article 31-B of the Tax Law of the State of New York and the Regulations promulgated thereunder, as the same may be amended from time to time (collectively the "Gains Tax Law"); or if such sale shall not be exempt under the Gains Tax Law, Seller and Purchaser agree to comply in a timely manner with the requirements of the Gains Tax Law and, at Closing, Seller shall deliver to Purchaser (i) an official return showing no tax due, or (ii) an official return accompanied by a certified or official bank check drawn on a New York State banking institution payable to the order of the New York State Department of Taxation and Finance in the amount of the tax shown to be due thereon. Seller shall (x) pay promptly any additional tax that may become due under the Gains Tax Law, together with interest and penalties thereon, if any, which may be assessed or become due after Closing, and/or execute any other documents that may be required in respect thereof, and (y) indemnify, defend and save Purchaser harmless from and against any of the foregoing and any damage, liability, cost or expense (including reasonable attorney's fees) which may be suffered or incurred by Purchaser by reason of the nonpayment thereof. The provisions of this subparagraph (c) shall survive Closing.
    (d) The delivery by Seller to Purchaser of a certification stating that Seller is not a foreign person, which certification shall be in the form then required by FIRPTA. If Seller fails to deliver the aforesaid certification or if Purchaser is not entitled under FIRPTA to rely on such certification, Purchaser

shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(e) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(f) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(g) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(h) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**Deed Transfer and Recording Taxes:**

17. At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**Apportionments and Other Adjustments; Water Meter and Installment Assessments:**

18. (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing.
(i) Taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately proceeding fiscal period applied to that latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**Allowance for Unpaid Taxes, etc.:**

19. Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less that five business days after closing, provided that official bills therefor computed to said date are produced at Closing.

**Use of Purchase Price to Remove Encumbrances:**

20. If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon notice (by telephone or otherwise), given not less than 3 business days before Closing, Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**Title Examination; Seller's Inability to Convey; Limitations of Liability:**

21. (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof,

(b) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other that those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeding in removing, remedying or complying with such Defects at the expiration of such adjournment(s) and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**Affidavit as to Judgments, Bankruptcies, etc.:**

22. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**Defaults and Remedies:**

23. (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**Purchaser's Lien:**

24. All money paid on account of this contract, and then reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**Notices:**

25. Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered.

**No. Assignment:**

26. This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**Broker:**

27. Seller and Purchaser each represents and warrants to other that it has not dealt with any broker in connection with this sale other than Cini Palmer of Houlihan Lawrence, 2070 Boston Post Road, Larchmont, NY 10538 and Phyllis Jacobs of Julia B Fee Sotheby's Int. Rlty, 49 Purchase Street, Rye, NY ("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**Miscellaneous:**

28. (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributes, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

_____
Seller
Amy Cappello

_____
Purchaser
Raymond P. Russell

_____
Seller

_____
Purchaser
Hatire Aikebaier

Attorney for Seller: Bronson Law Offices, P.C.

Address: 480 Mamaroneck Ave., Harrison, NY 10528

Tel: 914-269-2530    Fax: 888-908-6906
hbbronson@bronsonlaw.net

Attorney for Purchaser: Dana S. Montone, Law office of Dana S. Monton, PLLC

Address: 4 W. Red Oak Lane, ste 302, White Plains, NY 10604

Tel: 914-305-1177    Fax: 914-305-5806
dana@danamontonelaw.com

Receipt of the Down payment is acknowledged and the undersigned agrees to act in accordance with the provisions of Paragraph 6 above.

_____
Escrowee
H. Bruce Bronson, Esq., attorney for Seller

Contract of Sale

TITLE NO.

CappelloTORussell and Aikebaier

**DISTRIBUTED BY**
YOUR TITLE EXPERTS
The Judicial Title Insurance Agency LLC
800-281-TITLE (8485)  FAX: 800-FAX-9396

PREMISES

DISTRICT

SECTION 154.34

BLOCK 1

LOT 23

COUNTY or TOWN Village of Mamaroneck, Town of Rye

STREET NUMBER ADDRESS 429 Beach Ave., Mamaroneck, NY 10543

# PURCHASER'S RIDER TO CONTRACT OF SALE
## BETWEEN
## AMY CAPPELLO A/K/A AMY STELLWAGEN, AS SELLER
## and
## RAYMOND RUSSELL AND HATIRE AIKEBAIER, AS PURCHASER
## FOR: 429 BEACH AVENUE, MAMARONECK, NEW YORK 10543

R1. In the event of any inconsistency between the provisions of this Rider and those contained in the Contract of Sale to which this Rider is annexed, the provisions of this Rider shall govern and the Contract of Sale shall be construed accordingly.

R2. The attorneys are authorized on behalf of their respective clients to change, modify, alter or amend any time limitations stated in this Contract by and on behalf of their clients.

R3. The parties agree that this Contract may be transmitted between them or their respective attorneys e-mail. The parties intend that faxed or PDF signatures constitute original signatures and that an e-mailed Contract containing the signatures (original or scanned) of any or all of the parties is binding on the parties.

R4. Seller makes the following representations, to the best of Seller's knowledge which shall be true on the date of Closing however not survive Closing:

   i. ~~Seller has not filed for protection under any federal bankruptcy law nor has made an assignment of the Premises for the benefit of creditors, and that there are no third party beneficiaries to the Contract. If Seller has filed for protection under any federal bankruptcy law, Purchaser shall have the option of canceling this Contract of Sale.~~

   ii. Seller has not entered any agreement, which would constitute a covenant, easement or restriction on the Premises.

   iii. Seller has not received written notice of any outstanding violations, requirements or recommendations of any board, bureau, commission, department, body or official of any municipal, county, state or federal governmental unit or subdivision thereof having or asserting jurisdiction over the Premises.

   iv. Seller represents that the Premises are served by public water and sewer.

   v. Seller has not made any alterations to the Premises without having obtained all consents, permits and/or approvals as required by any governmental authority having jurisdiction over the Premises.

   vi. To the best of their knowledge, the dwelling on the Premises is not located in a flood zone as designated by the Federal Government.

vii. Seller has no knowledge of any pending public agency (i.e. Planning, Inland, Wetlands and/or Zoning) hearings presently affecting the Premises and will notify the Purchaser if the Seller receives notice of any such hearings after the signing of the Contract and prior to the Closing.

viii. The Premises are not part of a homeowners' association.

R5. Seller agrees that Seller will not further encumber the premises and that the Seller will notify the Purchaser immediately of any matters including, but not limited to, attachments, liens and zoning matters which may affect the premises during the pendency of this Agreement of which Seller receives notice.

R6. The Seller agrees to maintain the Premises between the date of this contract and the date of closing. The grounds shall be likewise maintained by the Seller between the date of Purchaser signing hereof and the closing of title, as required by season, including the mowing of lawns, the raking of fallen leaves, and the removal of snow and ice from walks and drives.

R7. Superseding any contrary provisions in this Contract, Purchaser shall have the election as to whether they want to close if any instruments of record (i) materially impair the use of the Premises for residential use, (ii) allow access or use rights to private third parties (other than utility companies) or (iii) impose monetary obligations on owner. If the Purchaser elects not to close pursuant to this provision, then the Contract shall be deemed cancelled and the Seller shall promptly return the down payment to the Purchaser.

R8. Supplementing Paragraph 2 of the Printed Form (and superseding any other contrary provisions in this Contract) Seller shall repair any damage (other than small holes the size of a nickel) caused by the removal of any personal property excluded under this Contract, and shall replace lighting fixtures with functioning builder's standard fixtures.

R9. Notwithstanding any contrary provisions in the standard form this Contract, if required by the municipal building code, certificates of occupancy and/or completion must be delivered for all outdoor improvements including sheds, patios, terraces, walkways, driveways and play areas.

R10. Seller shall provide a legal Certificate of Occupancy or other required certificate or letter of compliance for the premises as it currently exists on or before the date of Closing.

R11. Supplementing Para. 16(e) of the standard form, at Closing, the roof shall be free of leaks and the basement free of standing water. Supplementing Para. 16(f) of the standard form, at Closing, the premises will also contain a working carbon monoxide detector.

R.12. Purchaser may inspect the premises in the presence of the Seller or Seller's representative within forty-eight (48) hours of the closing. In addition, Purchaser shall be entitled

to access the premises in the presence of Seller or Seller's representative up to three (3) times prior to closing at reasonable times upon reasonable notice.

R.13. Purchaser has ordered a Radon inspection, the results of which shall be received within seven (7) business days of the date of Purchaser's inspection. Purchaser must notify Sellers' attorney in writing or via email within three (3) days of the receipt of the test results if the radon reading is 4.0 pico curies or more, at which time Seller agrees to cause said premises to be satisfactorily free of radon gas to a level equal to or less than 4.0 pico curies per liter.

R14. Seller represents to the best of their actual knowledge, that there are no underground fuel tanks on the subject Premises and no underground fuel tank(s) have been removed from the Premises during Seller's ownership.

R15. Prior to closing at Seller's, sole cost and expense, Seller shall close any and all open permits.

R16. Supplementing Paragraph 28 (f), the parties hereto agree that unless Purchaser's mortgagee fulfills that obligation, Seller's attorney is hereby designated as "the real estate reporting person" with respect to this transaction and is responsible for the completion and filing of Form 1099-S or such other successor forms as may be prescribed by the Internal revenue Service and for fulfilling all the obligations and requirements of Section 6045 (e) of the Internal Revenue Code of 1986, as amended.

R17. ~~Seller represents that the air conditioning system was in working order during the 2018 season and will be in working order at the time of closing.~~

R18. Prior to, and within 60 days of, Closing, at Seller's sole cost and expense, Seller shall have issued by the appropriate governmental authority, a Discharge Compliance Certificate.

SELLER: _Amy Cappello_
AMY CARPELLO A/K/A AMY STELLWAGEN

PURCHASER: _Russell_
RAYMOND RUSSELL

_Khr K_
HATIRE AIKEBAIER

# RIDER ATTACHED TO AND MADE PART OF CONTRACT OF SALE

## -BETWEEN-

**SELLER:** Amy Cappello
**PURCHASER:** Raymond P. Russell
**DATED:** As of the date of signatures on the document

---

The execution of the prepared contract of sale dated of even date herewith (the "**Contract**") shall be deemed an execution and acceptance of the terms and conditions of this rider (the "**Rider**") which are incorporated therein. If any provision of this Rider shall conflict with any printed provision of the Contract, the provisions of this Rider shall control.

1. **PROVISIONS DUE TO BANKRUPTCY** -

    The Seller is contemplating a Chapter 11 bankruptcy and shall file for bankruptcy prior to closing on the sale and within one week of the date of the fully executed Contract, otherwise Purchaser may cancel this contract and receive a refund of their down payment. In the event a bankruptcy is filed Seller's counsel will file a motion to approve the sale in accordance with 11 U.S.C. §§363 (b) and (f).

    Pursuant to the bankruptcy, title will be delivered free and clear of all liens including but not limited to mortgages, judgments and federal/state/local/municipal tax judgments/liens to the reasonable satisfaction of a title company duly licensed in the State of New York as retained by Purchaser.

    Purchaser's obligation to purchase is contingent upon bankruptcy court approval. If the Court does not approve the sale, then Seller must immediately return the down payment, title costs, inspector costs, appraisal costs and attorney's fees to the Purchaser. If the bankruptcy court does not approve the sale by the Closing Date, then Purchaser can cancel the Contract and have all foregoing funds returned.

2. **ERRORS & OMISSIONS**-The parties all agree that errors or omissions in computing apportionments or adjustments at the time of closing shall be corrected and that this provision shall survive the closing of title for a period of 60 days.

SELLER:

_/s/ Amy Cappello_
Amy Cappello

Dated: March , 2019

Page 1 of 2

Rider to Contract of Sale – Cappello to Russell

PURCHASER:

_____  Dated: March 28, 2019
Raymond P. Russell

PURCHASER:

_____  Dated: March 28, 2019
Hatire Aikebaier

Rider to Contract of Sale – Cappello to Russell

RIDER A TO CONTRACT OF SALE
BETWEEN
AMY CAPPELLO A/K/A AMY STELLWAGEN, AS SELLER
and
RAYMOND RUSSELL AND HATIRE AIKEBAIER, AS PURCHASER
FOR: 429 BEACH AVENUE, MAMARONECK, NEW YORK 10543

Prior to Closing, at Seller's sole cost and expense, Seller shall complete the following:

1. Secure kitchen sink to counter top.
2. Move refrigerator out so the door does not rub on walls.
3. Screw in dishwasher to counter top.
4. Vent upstairs Dryer to the outside of house.
5. Cover the sewer trap in garage as appropriate.
6. Have a licensed plumber redirect the drain from the driveway in a proper manner and get a discharge compliance certificate.
7. Ensure the sump pumps are in working order at Closing.
8. Remove all unaffixed items from the backyard.

SELLER: _____
AMY CAPPELLO A/K/A AMY STELLWAGEN


PURCHASER: _____
RAYMOND RUSSELL


_____
HATIRE AIKEBAIER

# Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i) [ ] Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

    _____

    (ii) [ ] Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller (check (i) or (ii) below):

    (i) [ ] Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

    _____

    (ii) [ ] Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment** (initial)

(c) _____ Purchaser has received copies of all information listed above.

(d) _____ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*

(e) Purchaser has (check (i) or (ii) below):

    (i) [ ] received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

    (ii) [ ] waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment** (initial)

(f) _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| Seller *Amy Cappello* | Date | Seller | Date |
|---|---|---|---|
| *Russell* | March 28, 2019 | *Aaron* | March 28, 2019 |
| Purchaser | Date | Purchaser | Date |
| Agent | Date | Agent | Date |